UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— X
OUTBOX SYSTEMS, INC. d/b/a/ SIMPLUS,          :
                                               :     20 Civ. 3568
                              Plaintiff,       :
                                               :     COMPLAINT
            -against-                          :
                                               :
AXCESS ADVANCE, LLC d/b/a THE BEVERLY          :
CASH GROUP, AXCESS ADVANCE GROUP INC.          :
d/b/a THE BEVERLY CASH GROUP, THE              :
BEVERLY CASH GROUP CORP. and ABRAHAM           :
FELSENSTEIN,                                   :
                                               :
                              Defendants.      :
———————————————————— X

Plaintiff Outbox Systems, Inc. d/b/a Simplus ("Simplus" or "Plaintiff"), as and for its Complaint herein as against defendants Axcess Advance LLC d/b/a The Beverly Cash Group, Axcess Advance Group Inc. d/b/a The Beverly Cash Group, The Beverly Cash Group Corp. (collectively, the "Beverly Cash Group") and Abraham Felsenstein ("Felsenstein"; together with Beverly Cash Group, "Defendants"), alleges as follows.

### NATURE OF THE ACTION

1.  In this action, Simplus seeks damages arising out of Beverly Cash Group's breach of certain information technology managed services agreements between the parties. Simplus provided the requested and agreed-upon monthly managed services for Beverly Cash Group, and invoiced Beverly Cash Group accordingly on a monthly basis for the period of March 2019 through February 2020 for a total amount due of $106,000.

2.  Although Beverly Cash Group, through its agent Felsenstein, several months after payments were due, authorized three separate credit card payments totaling $54,500 plus a 3% processing fee -- thereby evidencing that the services were indisputably provided -- many months later Felsenstein fraudulently disputed the charges by falsely claiming that the managed

{S2631170; 1}

services were not provided, resulting in chargebacks to Simplus of the $54,000 that was previously paid (plus the processing fee). Thus, the total invoiced amount of $106,000 remains due and payable and Beverly Cash Group is liable therefore, plus interest, attorneys' fees and costs, pursuant to the subject agreements.

3. Further, Felsenstein is liable for no less than $54,000 of the full amount due for fraudulently representing that Simplus did not in fact provide the managed services, resulting in the chargebacks and damages to Simplus in the amount of not less than $54,000, plus interest, costs and attorneys' fees as allowable by law.

## THE PARTIES, JURISDICTION AND VENUE

4. Simplus is a corporation organized under the laws of the State of Delaware with its principal place of business located at 10 West Broadway, Suite 500, Salt Lake City, Utah 84101.

5. Upon information and belief, defendants Axcess Advance LLC d/b/a The Beverly Cash Group, Axcess Advance Group Inc. d/b/a The Beverly Cash Group and The Beverly Cash Group Corp are each corporations organized under the laws of State of New York, with principal places of business located in Nassau County, New York, at 734 West Broadway, Woodmere, NY 11598 and/or 260 Central Avenue, Lawrence, NY 11559

6. Upon information and belief, defendant Felsenstein is an individual residing at 555 Willow Avenue, Cedarhurst, NY 11516.

7. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over Defendants because they each are

citizens of the State of New York and/or regularly and continuously conduct business in the State of New York.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

## FACTS COMMON TO ALL CLAIMS

**A. The Agreements**.

11. On or about February 14, 2019, Simplus and Beverly Cash Group executed a Master Services Agreement ("MSA"; Exhibit 1 hereto), which, inter alia, sets forth the general terms by which Simplus would provide information technology managed services to Beverly Cash Group, including pursuant to certain statements of work that may be entered into by the parties (MSA § 2.1).

12. Pursuant to the MSA, the Simplus and Beverly Cash Group entered into a Statement of Work on or about February 14, 2019 (the "SOW"; Exhibit 2 hereto). The SOW provides, inter alia, for a One Time Customer Readiness Fee of $2,300, and for Simplus to make available monthly the following managed services: Developer Support, Configuration Specialist, QA, Virtual Administration (40 hours) and Success Manager (8 hours) for a total monthly fee of $5,500. Simplus began providing such services in March 2019, with the fee for March 2019 being $7,800 ($2,300 + $5,500), with a monthly fee of $5,500 thereafter.

13. On or about June 18, 2019, Beverly Cash Group, obviously satisfied with the services, executed a Change Order to the SOW (the "Change Order"; Exhibit 3 hereto), wherein it agreed to increase the services, doubling the available hours and increasing its monthly payments to Simplus to $10,300 for the following managed services: Offshore Developer Support, Configuration Specialist, Quality Assurance, Virtual Administrator and Onshore Success Manager, with such increased services to begin on June 1, 2019.

**B.     The Invoices And Credit Card Authorization Payments.**

14.     The managed services were provided by Simplus and billed to Beverly Cash Group pursuant to the invoices listed below (the "Invoices"; Ex. 4 hereto), as follows:

Invoice No. SIN005170 dated 4/2/2019 for March Services ................................$  7,800
Invoice No. SIN005474 dated 5/15/2019 for May Services ..................................$  5,500
Invoice No. SIN005766 dated 6/17/2019 for 1st Half of June Services ................$  5,500
Invoice No. SIN005960 dated 7/2/2019 for 2nd Half of June Services.................$  4,800
Invoice No. SIN005984 dated 7/15/2019 for July Services..................................$10,300
Invoice No. SIN006220 dated 8/19/2019 for August Services.............................$10,300
Invoice No. SIN006458 dated 9/16/2019 for September Services ........................$10,300
Invoice No. SIN006722 dated 10/15/2019 for September Services ......................$10,300
Invoice No. SIN006966 dated 11/18/2019 for November Services....................... $10,300
Invoice No. SIN007223 dated 12/16/2019 for December Services .......................$10,300
Invoice No. SIN007509 dated 1/15/2020 for January Services ............................$10,300
Invoice No. SIN007929 dated 2/17/2020 for February Services ..........................$10,300

                                           TOTAL .............................$106,000

15.     In September 2019, and despite the invoices being payable within 30 days, Beverly Cash Group had not paid any of the then-outstanding Invoices listed above.

16.     Simplus demanded that Beverly Cash Group make payment, or else Simplus would have no choice but to suspend services.

17.     Accordingly, on September 19, 2019, Felsenstein, on behalf of Beverly Cash Group, signed a Simplus Credit Card Authorization Form dated September 19, 2019 authorizing payment of the first three invoices listed above totaling $18,800, plus a 3% processing fee of $564, in the total amount of $19,364 ("Authorization No. 1"; Ex. 5 hereto).

18.     In doing so, Defendants clearly acknowledged that the services reflected in the Invoices had indeed been provided several months earlier.  Further, by doing so Defendants caused and/or induced Simplus to continue rendering services.

19.     In November 2019, and despite the Invoices being payable within 30 days, Beverly Cash Group had not paid the remainder of the Invoices listed above that had been

rendered as of that date.

20. Simplus demanded that Beverly Cash Group do so, or else Simplus would have no choice but to suspend services.

21. Accordingly, on November 4, 2019, Felsenstein, on behalf of Beverly Cash Group, signed a Simplus Credit Card Authorization Form dated November 4, 2019 authorizing payment of the Invoices for the 2nd half of June and for July 2019 totaling $15,100, plus a 3% processing fee of $453, in the total amount of $15,553 ("Authorization No. 2"; Ex. 6 hereto).

22. In doing so, Defendants clearly acknowledged that the services reflected in the Invoices had indeed been provided many months earlier. Further, by doing so Defendants caused and/or induced Simplus to continue rendering services.

23. In January 2020, and despite the invoices being payable within 30 days, the Beverly Cash Group had not paid the remainder of the then-outstanding Invoices.

24. Simplus demanded that Beverly Cash Group do so, or else Simplus would have no choice but to suspend services.

25. Accordingly, on January 12, 2020, Felsenstein, on behalf of Beverly Cash Group, signed a Simplus Credit Card Authorization Form dated January 12, 2020 authorizing payment of the August and September Invoices totaling $20,600, plus a 3% processing fee of $618, in the total amount of $21,218 ("Authorization No. 3"; Ex. 7 hereto).

26. In doing so, Defendants clearly acknowledged that the services reflected in the Invoices had indeed been provided many months earlier.

**C.    Default And The Fraudulent Chargebacks**.

27. Beverly Cash Group never paid the remainder of the Invoices listed above and sent to Beverly Cash Group, despite due demand.

28. Thereafter, on or about February 29, 2020, Felsenstein disputed Authorization No. 3; on or about March 4, 2020, Felsenstein disputed Authorization No. 2; and on or about June 11, 2020, Felsenstein disputed Authorization No. 1.

29. Simplus opposed the disputes and has provided evidence that the services had indeed been provided many months before the disputes. Simplus also pointed out that the fact that such services had been provided was further evidenced by Defendants authorizing payment for the services many months after such services were provided, when Defendants were clearly in a position to determine whether or not the services had been performed. That Defendants authorized payment many months after the services were performed demonstrates that the services were indeed performed.

30. Nevertheless, the chargebacks were granted by the credit card companies and have not been reversed, despite due demand.

## FIRST CAUSE OF ACTION

### (Breach of Contract, against Beverly Cash Group)

31. Simplus repeats and realleges each and every allegation set forth above, as if fully set forth herein

32. As set forth above, the MSA, the SOW and the Change Order are valid and enforceable contracts between the parties.

33. Simplus at all relevant times performed its material obligations under the MSA, the SOW and the Change Order.

34. Beverly Cash Group breached its agreements with Simplus by failing to pay the Invoices as set forth above, despite due demand.

35. In addition, the MSA provides that "[i]n the event of any legal or other action is

necessary to enforce this Agreement, the prevailing Party shall be entitled to its costs and expenses, including reasonable attorneys' fees incurred in connection with this action (MSA SOW § 12.2).

36. Accordingly, as a consequence of the foregoing, Simplus has suffered damages in an amount to be determined at trial, but not less than $106,000, plus interest and costs of collection, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

**(Account Stated, against Beverly Cash Group)**

37. Simplus repeats and realleges each and every allegation set forth above, as if fully set forth herein.

38. As set forth above, Beverly Cash Group failed to pay Simplus the total amount due of $106,000 on outstanding Invoices, despite due demand. This amount is immediately due and owing.

39. Thus, there is an account stated between the parties.

40. Beverly Cash Group did not object to such Invoices and/or account stated within a reasonable time. To the contrary, as set forth above, Beverly Cash Group approved and authorized payment on Invoices totaling not less than $54,000.

41. Accordingly, as a consequence of the foregoing, Simplus has suffered damages in an amount to be determined at trial, but not less than $106,000 plus interest and costs of collection, including reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

**(Unjust Enrichment, in the Alternative, against Beverly Cash Group)**

42. Simplus repeats and realleges each and every allegation set forth above, as if fully set forth herein.

43. Beverly Cash Group's receipt and retention of the services provided by Simplus and the amounts due therefore, without paying Simplus the amount due of $106,000, has conferred an unearned and undeserved benefit upon Beverly Cash Group, allowing Beverly Cash Group to enrich itself unjustly and at the expense of Simplus. It is against equity and good conscience for Beverly Cash Group to retain such sums and/or benefits without compensation to Simplus.

44. Accordingly, as a consequence of the foregoing, Simplus has been damaged in an amount to be determined at trial, but not less than $106,000 plus interest and costs of collection, including reasonable attorneys' fees to the extent allowable by law.

## FOURTH CAUSE OF ACTION

**(Fraud, against Felsenstein)**

45. Simplus repeats and realleges each and every allegation set forth above, as if fully set forth herein.

46. As set forth above, Felsenstein executed Authorization Nos. 1-3 as set forth above, authorizing payment on certain of the Invoices in the amount of $54,000, thereby causing Simplus to continue providing services to Defendants.

47. Many months later, as set forth above, Felsenstein fraudulently and falsely disputed the Invoices for which he had previously knowingly authorized payment. In particular, Felsenstein represented, verbally and/or in writing, that Simplus did not provide the subject services despite the fact that he was well aware that the services were provided many months earlier and as a result he had authorized payment therefore. Such fraudulent statements were made to American Express and/or its agent or processor Elavon as follows: On or about February 29, 2020, Felsenstein fraudulently disputed Authorization No. 3; on or about March 4, 2020, Felsenstein fraudulently disputed Authorization No. 2; and on or about June 11, 2020,

Felsenstein fraudulently disputed Authorization No. 1.

48. Such false statements were clearly made by Felsenstein knowingly and with an intent to deceive, and to induce reliance, in order for Felsenstein to obtain chargebacks and/or a return of funds in an amount not less than $54,000.

49. Simplus was clearly damaged thereby, as the chargeback deprived Simplus of not less than $54,000 it had previously received. Further, Simplus was induced by the subject authorizations to continue providing services for Defendants, and has not been compensated therefore.

50. Accordingly, as a consequence of the foregoing, Simplus has been damaged in an amount to be determined at trial, but not less than $54,000, plus interest and costs of collection, including reasonable attorneys' fees to the extent allowable by law.

WHEREFORE, Simplus demands judgment as follows:

(i) On the First Cause of Action, awarding Simplus damages in an amount to be determined at trial, but not less than $106,000, plus interest and costs of collection, including attorneys' fees pursuant to the Agreement;

(ii) On the Second Cause of Action, awarding Simplus damages in an amount to be determined at trial, but not less than $106,000, plus interest and costs of collection, including attorneys' fees to the extent allowable by law, and

(iii) On the Third Cause of Action, in the alternative, awarding Simplus damages in an amount to be determined at trial, but not less than $106,000, plus interest and costs of collection, including attorneys' fees to the extent allowable by law;

(iv) On the Fourth Cause of Action, awarding Simplus damages in an amount to be determined at trial, but not less than $54,000, plus interest and costs of collection, including attorneys' fees to the extent allowable by law, and punitive damages to the extent allowable by law; and

(v) For such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 6, 2020

SULLIVAN & WORCESTER LLP

By: /s/ Gerry Silver
    Gerry Silver, Esq.
    1633 Broadway, 32nd Floor
    New York, NY  10019
    (T) (212) 660-3096
    (F) (212) 660-3001
    gsilver@sullivanlaw.com

Attorneys for Plaintiff